FILED

2007 Dec-17  PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

DWAYNE HANEY,                    ]
                                 ]
       Plaintiff,                ]
                                 ]
    vs.                          ]    6:06-CV-00314-LSC
                                 ]
EATON ELECTRICAL, INC., et al.,  ]
                                 ]
       Defendants.               ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by defendants Eaton Electrical, Inc., and Cutler Hammer, Inc. (collectively, "Eaton" or "Defendants"), on May 9, 2007.  (Doc. 50.) Defendants also filed a motion to exclude the expert testimony of William McGuire.  (Doc. 48.)  Plaintiff Dwayne Haney sued Eaton[1] for violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and breach of express or implied warranties after he sustained injuries when he became

_____

[1]Other defendants: New Era Converting Machinery, Inc., Rockwell Automation, Inc., Allen-Bradley Co., and Alabama Power Co., have been dismissed from this action.

entangled in a winder machine at 3M Company's production facility in Guin,

Alabama.  The issues raised in Defendants' motion for summary judgment

and motion to exclude have been briefed by both parties and are now ripe

for decision.  Upon full consideration of the legal arguments and evidence

presented by the parties in this case, Defendants' motions will be granted.

II.     Facts.[2]

Plaintiff Dwayne Haney ("Haney" or "Plaintiff") operated a winder

machine on the continuous web handling line ("CWH1 line") at 3M

Company's ("3M") plant in Guin, Alabama, on February 2, 2004.  A tape-like

film material ("web material") used to mark lane lines on parking lots,

roads, and highways, is produced on the CWH1 line.  While attempting to do

a roll change on the machine, Haney's hand got caught in the web material,

and he was pulled into the winder.  When co-workers attempted to hit

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

emergency stop buttons to stop the roll from rotating, the winder failed to deactivate.

3M subsequently conducted an investigation into the accident and determined that the emergency stop buttons did not deactivate the winder because one or both of two Type M D-26 relays failed to function.  The relays at issue were manufactured by Cutler Hammer, Inc., which merged into Eaton Electrical, Inc., in May 1979.  Other emergency stop relays manufactured by Cutler Hammer, Inc., did not fail when tested.

Tests showed that the two "failed" relays worked properly when the machine was powered on the day after the accident, but when the machine was left powered up overnight and running in a continuously energized state, the relay(s) failed.  3M's investigators did not determine any specific problem or reason why the particular relay(s) failed when the machine ran in a continuously energized state.  The CWH1 line operated in a continuously energized state because a sticky adhesive glue had to be applied to the web material in a uniform consistency, and the line was operating in a continuously energized state on the day of Haney's accident.   Haney asserts that the failure of the relay(s) to deenergize the winder caused or increased

the severity of his injuries.   Plaintiff contends that the relay(s) were defective in their engineering and design and Defendants also should be held liable for failure to warn and breach of warranty.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

A.    Testimony of William McGuire.

In conjunction with their motion for summary judgment, Defendants have moved to exclude the expert testimony of William McGuire ("McGuire").  (Doc. 48.)  Defendants argue that McGuire is not qualified to offer testimony on electrical relay design, warnings, and/or causation. Defendants also contend that McGuire's testimony is not grounded in sound

methodology. Plaintiff maintains that McGuire is qualified and there is documented support for his expert opinions.

While Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude expert testimony that is either unreliable or irrelevant. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (1999). The Eleventh Circuit Court of Appeals summarized the applicable rules in *City of Tuscaloosa v. Harcross Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), when it wrote that scientific expert testimony is admissible when (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See also, e.g.*, *Allison*, 184 F.3d at 1309; *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000).

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U. S. 579 (1993), the U.S. Supreme Court imposed a special duty on trial judges pursuant to Rule 702, requiring the judge to act as a "gate-keeper" and ensure that scientific evidence is both reliable and relevant before it is admitted. *Id.* The Supreme Court has recognized that judges are not trained scientists and that the task imposed by *Daubert* is difficult in light of their comparative lack of expertise. *Id.* (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 148 (1997)). Nevertheless, the judge's relatively inexpert attention is considered preferable to dumping a "barrage of questionable scientific evidence on a jury." *Id.* While this Court is aware of its duty as a gatekeeper, it understands that its role is not intended to supplant the adversary system or the role of the jury, and it recognizes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert*, 509 U. S. at 596). The Court has received sufficient information and explanation from both parties to allow it to determine whether McGuire's testimony is admissible under the *Daubert* framework.

The *Daubert* Court set out four nonexclusive factors that should be considered by a trial court assessing the reliability of expert scientific testimony under Rule 702: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has gained general acceptance within the scientific community. *Id.* (citing *Daubert*, 509 U. S. at 595). Other factors that have been considered in conducting a *Daubert* analysis include reliance on anecdotal evidence (as in case reports), temporal proximity, and improper extrapolation (as in animal studies). *Allison*, 184 F.3d at 1312. The primary focus of a *Daubert* inquiry is the principles and methodology underlying expert opinion testimony, not on the conclusions they generate. *Id.* (citing *Daubert*, 509 U. S. at 595). However, testimony based solely on the experience of the expert is not admissible. *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999)). The trial court must be sure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Accordingly, the proponent of the testimony does not have the burden of proving that the testimony is scientifically correct, but that by a preponderance of the evidence, it is reliable. *Allison*, 184 F.3d at 1312; *see also Joiner*, 522 U. S. at 146 ("[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data.  But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Daubert*,   509 U.S. at 589–90 (Rule 703 requires that the subject of an expert's testimony must be "scientific knowledge" and "knowledge" connotes more than a subjective belief or unsupported speculation; any inference or assertion must be derived by the scientific method to qualify as "scientific knowledge.").  This scientifically valid connection between the opinion and the facts has also been called "analytical fit."  *Rider*, 295 F.3d at 1197.

*Daubert* also requires a special inquiry into relevance, calling on the trial court to ensure that expert testimony logically advances a material

aspect of the proposing party's case.  *Allison*, 184 F.3d at 1312 (citing *Daubert*, 509 U.S. at 591).  There must be a valid scientific connection between the testimony and the disputed facts in the case.  *Id*.

Plaintiff offers McGuire's expert opinion that (1) if the relay(s) in question had functioned on the CWH1 line, Haney would not have been injured; (2) the relay(s) in question should have worked in a continuously energized state; (3) that the relay(s) in question failed because of an increase in heat because the CWH1 line ran in a continuously energized state; and (4) there should have been warnings on the relays that they did not work in a continuously energized state.  Although Plaintiff argues that there is no evidence that McGuire *lacks* qualifications (Doc. 68 at 13), the burden is on the plaintiff to affirmatively establish that his expert *has* suitable qualifications.  *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).  Haney argues that McGuire has sufficient electrical and engineering education and experience to give an opinion regarding the malfunction of the relay(s) in question, but Plaintiff does not explain to this Court how McGuire is qualified to give opinions regarding the cause of Haney's injuries or the existence, sufficiency, placement, or content of

warnings on the relays.  Because there is absolutely no evidence that McGuire is qualified to give an expert opinion on warnings or the causation of injuries, his testimony on these issues must be stricken and disregarded.

Assuming, without deciding, that McGuire has sufficient qualifications to testify about the relay(s) in question in this case, the Court agrees with Defendants that Haney has not presented evidence that McGuire's testimony is reliable or relevant.  Plaintiff argues that the tests performed by engineers Mike Handley and Brian Junkin showed that the relays failed in a continuously energized state—but there is no reliable scientific explanation how McGuire came to the conclusion that the relays failed because of an increase in heat.  McGuire did not test the relays in question or similar relays.  He has not examined the relays.  He did not review any drawings showing how the emergency stop buttons and the winder relay were actually connected at the time of the accident.

In fact, it is not entirely clear to this Court that McGuire opined with certainty that heat was *the* cause of the relays' malfunction in this case.  In his report, McGuire writes: "Continuously energizing a relay causes an increase in heat in the Type M relays.  Based upon a reasonable degree of

engineering certainty *possibly causing* [sic] the failure of the Type M relay."
(McGuire Report at 8 (emphasis added).)  In his deposition, McGuire stated
that he believed that because the "[relay] was energized continuously for
a long period of time, heat was generated and was *attributing* [sic] *to the
problem*."  (McGuire Dep. at 123 (emphasis added).)  He conceded that
"nobody knows" what happened inside the relays at the time of the accident
(*id*. at 183), that he did not have enough information to conclude that a
manufacturing defect existed (*id*. at 153-54), and that he would not design
the relays any differently (*id*. at 153).

While this Court is confident that McGuire is qualified to give his
expert opinion in other engineering matters, McGuire's lack of certainty,
examination, and testing; his inability to explain how heat actually affected
the relays in question in terms of their particular engineering and design;
and his concession that he would not design the relays any differently makes
his testimony legally unhelpful in this case.  Therefore, Defendants' motion
to exclude McGuire's testimony will be granted.

B.    AEMLD Claims.

Plaintiff contends that Defendants are liable under AEMLD because the

relay(s) in question had a manufacturing or design defect, and Defendants

did not issue adequate warnings.  (Doc. 73 at 14-27.)[3]  In order to establish

liability under AEMLD, a plaintiff must show:

> (1) [H]e suffered injury or damages to himself or his
> property by one who sells a product in a defective
> condition unreasonably dangerous to the plaintiff as
> the ultimate user or consumer, if
>> (a) the seller is engaged in the business of
>> selling such a product, and
>> (b) it is expected to and does reach the user or
>> consumer without substantial change in the
>> condition in which it was sold.
> (2) Showing these elements, the plaintiff has proved
> a prima facie case although
>> (a) the seller has exercised all possible care in
>> the preparation and sale of his product, and
>> (b) the user or consumer has not bought the
>> product from, or entered into any contractual
>> relation with, the seller.

---

[3]To the extent Plaintiff's Complaint alleges additional causes of action for
negligence or wantonness, the Court finds that these claims are due to be dismissed
because they have not been raised or argued in opposition to Defendants' motion for
summary judgment.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599
(11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary
judgment are deemed abandoned.")

*Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132-33 (Ala. 1976).  Defendants argue that there is no expert testimony that a manufacturing or design defect existed in this case, and Plaintiff cannot establish a failure to warn claim.

"In order to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]." *Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 312 (Ala. 2003) (internal quotations omitted).  "The existence of a safer, practical, alternative design must be proved by showing that:

> (a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
> (b) taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

*Id.* (internal quotations omitted).  Although Haney acknowledges that he "must demonstrate that a safer, practical design was available," (Doc. 73 at 17) no safer, practical, alternative design for the relay(s) at issue has been presented to this Court.  Even if the Court found Plaintiff's proposed expert's testimony admissible, McGuire testified that he did not have an alternate design.  (McGuire Dep. at 154.)

Plaintiff cites *Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So. 2d 991 (Ala. 1981), for the proposition that he can show a manufacturing defect by demonstrating "an unintended flaw or abnormality which renders it more dangerous than it would have been if it had been constructed as intended."  (Doc. 73 at 16.)  However, no further argument on this issue is presented, and Haney does not submit any admissible evidence that the relay(s) in question were not constructed as intended.

Plaintiff also argues that Defendants failed to issue adequate warnings regarding preventive maintenance and the use of the relay(s) as safety devices.  "Under the AEMLD, if a manufacturer or seller places goods on the market that are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods can create danger

when used in their customary manner, the defendant must exercise reasonable diligence to make such danger known to the persons likely to be injured by the product.*" King v. S.R. Smith, Inc.*, 578 So. 2d 1285, 1287 (Ala. 1991) (citing *Hawkins v. Montgomery Indus. Int'l, Inc.*, 536 So. 2d 922 (Ala. 1988); *Gurley v. Am. Honda Motor Co.*, 505 So. 2d 358 (Ala. 1988); *Cazalas v. Johns-Manville Sales Corp.*, 435 So. 2d 55, 58 (Ala. 1983)). Plaintiff agrees that in order "[t]o establish a failure to warn claim under the AEMLD, a plaintiff must prove the following: defendant had a duty to warn [the] plaintiff of the product's danger when used in its intended [or customary] manner; any warning provided by the defendant breached that duty because the warning was inadequate; and the breach of that duty [proximately] caused [the] plaintiff's injuries." (Doc. 73 at 17 (citing *Campbell v. Robert Bosch Power Tool Corp.*, 795 F. Supp. 1093, 1097 (M.D. Ala. 1992).)   Haney also concedes that in order "[t]o establish the defendant's duty to warn, [a] plaintiff must show the following[: the] defendant placed the product into the stream of commerce[;], the product was substantially unaltered when [the] plaintiff used it; [the] product was imminently dangerous when put to its intended or customary purpose[;] and

[the] defendant knew or should have known that the product could create a danger when used in its intended or customary manner."  (*Id.* at 17-18) *See also Campbell*, 795 F. Supp. at 1097.

Haney, however, has not introduced reliable evidence that the relays in question were imminently dangerous when put to their intended purpose; that Defendants knew or should have known of that alleged danger; or that the lack of warning in this case proximately caused his injuries.[4]  There is also a lack of admissible evidence establishing that Defendants' relays were substantially unaltered at the time of Plaintiff's accident.  In fact, Haney's argument regarding warnings about preventive maintenance adopts Defendants' contention that the relays could have failed because of wear and tear.  (Doc. 73 at 24-25.)

---

[4]The Court notes that while it is undisputed that Haney was physically injured in an accident involving a winder machine at 3M's plant in Guin, Alabama, on February 2, 2004, there is currently no evidence in the record that establishes exactly how and at what point his injuries occurred.  As it stands now, there is no evidence indicating that Haney's injuries were the result of Defendants' relays' failure to deactivate the winder when the emergency stop buttons were pushed.  The Court is forced to speculate regarding the extent of Plaintiff's injuries before his co-workers could react—and wonder how the alleged delay in stopping the machine affected or increased the severity of those injuries.

C.     Warranty Claim.

Finally, Plaintiff argues—without citation to any legal authority—that Defendants are liable for breach of warranty.  (*Id*. at 28.)  Because bare assertions that warranties were made and broken is insufficient to survive summary judgment, Haney's warranty claim is deemed abandoned.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

However, even if this Court ignored Plaintiff's lack of supporting legal authority, Haney has not produced sufficient evidence to back his warranty claim.  A party alleging a breach of an implied warranty must show the existence of the warranty, a breach of that warranty, and damages proximately resulting therefrom.  *Barrington Corp. v. Patrick Lumber Co., Inc.*, 447 So. 2d 785, 787 (Ala. 1984).  A plaintiff bringing an action under an express warranty must prove that "'the warranty failed of its essential purpose'; [and] that either the dealer refused to repair or replace the malfunctioning component, or failed to do so 'within a reasonable time.'" *Feil v. Wittern Group, Inc.*, 784 So. 2d 302, 310 (Ala. Civ. App. 2000)

(quoting *Lipham v. Gen. Motors Corp.*, 665 So. 2d 190, 192 (Ala. 1995)).

Haney's evidence simply does not meet these criteria or support Plaintiff's

contention that warranties existed for which Defendants can be held liable

in this case.

V.     Conclusion.

For the reasons stated above, Defendants' motions will be granted.

A separate order will be entered.

Done this 17th day of December 2007.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297